Dear Senator Strong:
This opinion is in response to your questions asking:
 Can a television station producing a program under contract with the Lottery Commission exclude live coverage of the program by other media representatives?
 Is the two minute program by KCTV an extension of the function of the Lottery Commission?
 Does the Joint Committee on Administrative Rules have any authority to review guidelines issued by a non-governmental entity which is acting as an agent of the Lottery Commission?
It is my understanding that the above questions have arisen as a result of the Lottery "Jackpot Spin" which is the method for the selection of a grand prize winner in the Lottery's Instant Game. Briefly stated, the Lottery selects "finalists" for the Jackpot drawing by selecting at random, names submitted on winning entry tickets. These individuals come to Kansas City where they spin a wheel containing 100 positions. The positions contain prizes ranging from $1,000 to the Jackpot prize. Each "finalist" wins the amount of the prize shown at the position in which the ball rests at the completion of the spinning of the wheel.
It is our further understanding that the Lottery Commission has contracted with the consortium of television stations headed by KCTV, Channel 5, in Kansas City. This contract purportedly grants exclusive broadcast rights to these stations in return for production costs, air time, and promotion of the drawing. The drawing is conducted at television station KCPT, Channel 19, in Missouri. The program is filmed by both the lottery and KCTV, Channel 5, and is later broadcast in an edited version by all of the consortium stations. The Jackpot wheel is owned by the State Lottery Commission and the Lottery Commission is in charge of its security throughout. The drawing is observed by auditors who have contracted with the Lottery in order to ensure the fairness of the "drawing". Prizes won by the contestants are paid by the Missouri State Lottery through normal state procedures from the State Lottery Fund. It is my understanding that relying on this exclusive contract Channel 5 has excluded only television cameras from the KCPT studios.
The question has been raised as to whether the Jackpot spin or drawing comes under the provisions of the Sunshine Law, Chapter 610 as amended. Section 610.010(3), RSMo Supp. 1984, defines "public meeting" as follows:
 [A]ny meeting of public governmental body subject to this act at which any public business is discussed, decided, or public policy formulated, but shall not include an informal gathering of members of a governmental body for ministerial or social purposes when there is no intent to avoid the purposes of this chapter;
The Jackpot drawing is simply a ministerial function of the Lottery Commission with, generally, no members of the Commission present for any public meeting purpose. Accordingly, we believe that it is clear that the provisions of the Sunshine Law have no application to the situation you present. While not violating the "letter" of the law, the Lottery Commission will have to make the determination as to whether or not the media availability policy related to this contract is within the "spirit" of the Open Meetings Law.
The apparent pertinent question is whether the Lottery Commission has authority to enter into a contract such as described. Article III, Section 39(b) 5, Missouri Constitution, indicates that the Lottery Commission has implicit authority to advertise subject to certain limitations. Section 313.230(1)(1), RSMo Supp. 1985, says in part that the Commission may regulate "such other matters necessary or desirable for the efficient and economical operation and administration of the lottery . . ." Advertising is also mentioned in Section 313.335, RSMo Supp. 1985. Clearly the spinning of the wheel which is permitted under 12 CSR 40-80.060
and 12 CSR 40-80.070 is advertising. This advertising is subject to a competitive bidding process. Thus there appears to be authority for the Commission to advertise to promote the lottery as a necessary adjunct to the power to contract through a public bidding process even though the contract involves the granting of exclusive broadcast rights to a certain station. The Lottery Commission advises that this contract promotes the efficient and economical operation and administration of the lottery.
While we believe that such contract is supported in law, this office is extremely concerned with the administration of this contract and its implementation by the parties. Not one day goes by without the issue concerning the propriety of not only the contract but the implementation of the contract being a matter of public notoriety.
What appears to have happened is that a program for raising money is beginning to take on many questionable aspects under the guise of authority to enter into an exclusive contract. The Lottery Commission has lost sight of the will of the people under the constitutional provision that a percentage of the lottery money was set aside for administration and expense. This of course includes advertising. There certainly was no indication that proceeds from such contracts as this were part of the proceeds of the lottery which were contemplated to be divided up pursuant to the constitutional provision. Thus the Lottery Commission has creatively and perhaps with appropriate business judgment sought ways to reduce the expense but unfortunately has created confusion, threats of legal action and an apparent lack of control over the party with whom they have contracted.
The Lottery Commission should consider the needs of the people for information imparted through media which does not share an exclusive right and to the extent inequities exist remedy those inequities. There is no desire on the part of this office to support matters which impinge on the freedom of the press. However, we must candidly admit that the lottery program is unique and yet its uniqueness should not be used as an excuse to limit the freedom of the press to access in any respect.
Clearly the contract will be renewable shortly. We believe, if all interests can bear with the present circumstances and no further controversial situations arise, that with the assistance of this office matters as suggested by your opinion request can be resolved in a professional and appropriate manner considering the dictates of the people through the Missouri Constitution under Article III, Section39(b) and attendant legislation. Certainly the Missouri legislature will have an opportunity to consider fully the views of all interested parties and make appropriate changes which are consistent with the constitutional dictates in the event the Lottery Commission is unable or unwilling to do so. This office stands ready to assist in advising on this matter.
Finally, your last question asks whether the Joint Committee on Administrative Rules has any authority to review guidelines issued by non-governmental entities acting as agents for state governmental bodies. The Joint Committee on Administrative Rules is created by Section 536.037, RSMo 1978. The Committee must approve the Lottery Commission's rules before those rules are effective, under Section 313.220, RSMo Supp. 1985. However, the authority of the Joint Committee on Administrative Rules is to review rules of an agency and the guidelines of non-governmental organizations (such as a television station), even though acting on behalf of the state agency, do not appear to be subject to the review of the Joint Committee. See Section 536.010(1), RSMo 1978, which limits the definition of "agency" to any administrative officer or body existing under the Constitution or by law and authorized by law or the Constitution to make rules or to adjudicate contested cases. Therefore, we conclude that the guidelines of KCTV would not be subject to review by the Joint Committee on Administrative Rules.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General